FILED
IN OPEN COURT

JAN 1 7 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:11cr199 |
| | ) | |
| EDWARD MACAULEY, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count One of the superseding indictment filed on August 24, 2011, and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1.     The defendant, Edward Macauley, a/k/a "Cudjoe Opoku," was a resident of Ghana. Macauley was a manager of a Ghana-based heroin trafficking organization and was responsible for importing into the United States multiple kilograms of heroin. Macauley and his associates used couriers aboard commercial airlines to smuggle heroin from Ghana to the United States, including into the Eastern District of Virginia.

2.     Nuru Yakubu, a/k/a "Ohehe," was a resident of Ghana. Yakubu arranged for and used couriers in Ghana to transport heroin from Ghana to the United States for himself and the Macauley organization.

3.     Frank Ehiobu was a resident of Ghana. Ehiobu arranged for and used couriers in Ghana to transport heroin from Ghana to the United States for himself and the Macauley organization.

4.      Fred Oppong Brobbey was a resident of Ghana. Brobbey concealed heroin in suitcases used by Macauley organization couriers to transport heroin into the United States.

5.      William Andoh, a/k/a "Willie," is a citizen of Ghana and a resident of New York. Andoh was to receive a shipment of heroin that had arrived in the United States in November 2010 from a courier who had been directed to Andoh by the defendant. Andoh distributes heroin within the New York, NY, and Baltimore, MD, metropolitan areas.

6.      Matilda Antwi is a citizen of Ghana and a resident of Alexandria, Virginia, in the Eastern District of Virginia. Antwi was a courier for the Macauley organization.

7.      Jacqueline Aku Jordan is a citizen of Ghana and a resident of New York. Jordan was a courier for the Macauley organization.

8.      From at least in or about September 2010 through at least June 2011, the defendant, along with others, directed the imporation of heroin from Ghana into the United States.

9.      In or about September 2010, the defendant and others offered to pay Antwi to smuggle heroin into the United States.

10.     In or about September 2010, the defendant met with Antwi at a hotel in Accra, Ghana, and gave her a quantity of heroin for importation into the United States.

11.     On or about September 4, 2010, Antwi, while in possession of approximately 1.2 kilograms of heroin, attempted to depart Kotoka International Airport in Ghana on United Airlines flight number 991, which was bound for Dulles International Airport in the Eastern District of Virginia.

-2-

12.     On or about November 4, 2010, in Accra, Ghana, the defendant discussed with a drug courier the transporation of illegal narcotics from Ghana to the United States. The defendant provided the courier with a cell phone number to use to contact the defendant.

13.     On or about November 19, 2010, the defendant met the drug courier at the defendant's house in Accra, Ghana. The defendant told the courier that the courier's trip to transport the drugs would occur before November 24, 2010. The defendant told the courier that the defendant could not purchase the courier's plane ticket because the defendant had tied up in the United States approximately $350,000 from the sale of drugs in the United States.

14.     On or about November 20, 2010, the defendant met the drug courier at the defendant's house in Accra, Ghana. The defendant told the courier that the courier's trip to transport the drugs would occur on November 26, 2010.

15.     On or about November 28, 2010, associates of the defendant gave the courier a carry-on bag containing approximately 1.4 kilograms of heroin that the courier was to transport to Dulles International Airport.

16.     On or about November 28, 2010, the drug courier in possession of the carry-on bag boarded a flight from Kotoka International Airport to Dulles International Airport.

17.     On or about November 29, 2010, the drug courier in possession of the carry-on bag arrived at Dulles International Airport in the Eastern District of Virginia.

18.     On or about November 30, 2010, the defendant spoke by telephone with the drug courier, who was in the Eastern District of Virginia, and discussed delivery of the heroin.

19.     On or about December 1, 2010, Brobbey called the courier and told him to call the "boss," meaning the defendant.

20.     On or about December 3, 2010, the defendant called the courier and gave him Andoh's telephone number of (xxx) xxx-7658 so that the courier could call Andoh and arrange delivery of the heroin. Thereafter, using telephone number (xxx) xxx-7658, Andoh spoke with the courier regarding the delivery of the heroin.

21.     On or about December 16, 2010, the courier told Yakubu that the heroin he had transported on November 28, 2010, was stored in a locker in the United States. Later that day, the defendant asked the courier if he had the key to the locker in the United States.

22.     On or about February 18, 2011, the defendant, Ehiobu, and a co-conspirator met with the courier at the defendant's house in Accra, Ghana, where they dicussed another trip to be taken by the courier to transport heroin to the United States. The defendant told Ehiobu that the courier was an associate of the defendant and that he regarded the courier with confidence. The defendant, Ehiobu, and the courier also discussed that while the courier was in the United States in February transporting drugs, the courier could meet with an associate of the defendant to deliver the November 2010 shipment of heroin. The defendant also called Yakubu to tell him that the courier would be traveling to the United States.

23.     On or about February 19, 2011, the defendant, Brobbey, and other co-conspirators met with the courier in Accra, Ghana, and told him that a ticket had been purchased for him on United Airlines flight number 991 departing for Dulles International Airport on February 20, 2011, and that Brobbey would make the carry-on bag for transporting the heroin.

24.     On or about February 20, 2011, the courier boarded United Airlines flight number 991 with a carry-on bag containing approximately 989 grams of heroin, which was inside a hidden compartment of the bag.

-4-

25.    On or about the morning of February 21, 2011, the courier in possession of the carry-on bag arrived at Dulles International Airport in the Eastern District of Virginia.

26.    On or about the afternoon of February 21, 2011, the defendant called the courier and told him that the defendant would arrange to have someone pick up the carry-on bag containing the heroin if Ehiobu did not do so.

27.    On or about the morning of February 22, 2011, the defendant received a call from Andoh at telephone number (xxx) xxx-7658 and the two had a conversation. In that conversation, Andoh told the defendant that he had spoken to the drug courier and had instructed the courier to tell Andoh if the courier was in trouble. In that conversation, Andoh also told the defendant that "everybody is scared."

28.    On or about the morning of February 23, 2011, the defendant received a call from Andoh at telephone number (xxx) xxx-7658 and the two had a conversation. In that conversation, the defendant told Andoh that he believed the drug courier was not telling the truth and that they made a mistake. In response, Andoh suggested that the defendant call the airline to get information about whether the courier had been caught. The defendant told Andoh that if the courier "brings the stuff to you it's fine, don't worry yourself. Just stay calm."

29.    On or about the morning of February 23, 2011, the defendant received a call from Andoh at telephone number (xxx) xxx-7658 and the two had a conversation. In that conversation, Andoh told the defendant that the courier had not been caught, had already sold a previous shipment of heroin, and had "all the money." Andoh described the previous shipment as the one the defendant had told the courier to bring to Andoh.

30.     On or about June 5, 2011, the defendant and another co-conspirator met Jordan in Accra, Ghana, to arrange the Jordan's transportation of heroin from Ghana to the United States. In the presence of the defendant, the co-conspirator, using a wig of artificial hair, stitched a parcel containing approximately one kilogram of heroin into Jordan's hair.

31.     On or about June 6, 2011, Jordan, while in possession of approximately one kilogram of heroin, attempted to depart Kotoka International Airport in Ghana on United Airlines flight number 991, which was bound for Dulles International Airport in the Eastern District of Virginia.

32.     The acts taken by the defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. The defendant further acknowledges that the defendant is obligated under the plea agreement to provide additional information about this case beyond that which is described in this statement of facts.

Respectfully submitted,

NEIL H. MacBRIDE
UNITED STATES ATTORNEY

By: _____
James P. Gillis
Karen L. Dunn
Assistant United States Attorneys

-6-

<u>Defendant's Signature</u>:  After consulting with my attorney and pursuant to the plea agreement entered into this day between the United States and me, I hereby stipulate that the above statement of facts is true and accurate, and that had the matter proceeded to trial, the United States would have proven the same beyond a reasonable doubt.

Dated: 01/17/2012

_____
Edward Macauley
Defendant

<u>Defense Counsel's Signature</u>:  I am counsel for the defendant in this case.  I have carefully reviewed the above statement of facts with the defendant.  To my knowledge, the defendant's decision to stipulate to these facts is an informed and voluntary one.

Date: 01/17/2012

_____
William Bruce Cummings
Counsel for the Defendant

-7-