IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 1:11cr199 (JCC) |
| | : | |
| EDWARD MACAULEY, | : | |
| | : | |
| Defendant. | : | |

**POSITION OF THE DEFENDANT
WITH RESPECT TO SENTENCING FACTORS AND
BRIEF ADDRESSING 18 U.S.C. §3553(a) FACTORS**

COMES NOW the defendant, EDWARD MACAULEY, (hereinafter, Mr. Macauley), by and through counsel, and files this, his position with respect to the sentencing factors to be used in this matter and his brief addressing the 18 U.S.C. §3553(a) factors , and for it he states:

I. INTRODUCTION

This Court, although not bound by any mandatory application of the requirements and procedures established by the United States Sentencing Commission in the United States Sentencing Guidelines (hereinafter the guidelines), will be guided by the advisory application of those requirements and procedures.

The United States Probation Office, through Carla G. Coopwood, Senior U.S. Probation Officer, has filed its presentence investigation report (hereinafter the report) in this matter, and the corrections and/or additions thereto, and has provided a copy of each to counsel for Mr. Macauley. Counsel and Mr. Macauley have reviewed said report, and agree, except as addressed herein, in all material regards with the facts and the

application of the guidelines as contained therein. It is anticipated that the government, through its counsel, James P. Gillis, Esquire, Assistant United States Attorney, will also file its position concerning sentencing in this matter.

Counsel for Mr. Macauley, counsel for the government and Ms. Coopwood, have consulted as necessary concerning these matters and this position document reflects those consultations.

## II. FACTUAL DISPUTES

Mr. Macauley asserts that despite the statements ascribed to him by the CI concerning Mr. Macauley having money "tied up" in the United States (*see*, superceding indictment, ¶ 16; statement of facts, ¶ 13 and report, ¶ 43) he does not recall making that statement to the CI and, factually, would have had no need to make such a statement to the CI since the heroin shipment involved was not Mr. Macauley's, but was Nuru Yakubu's. The government repeated the CI's assertion in the superceding indictment and Mr. Macauley agreed, in the statement of facts, that the government could put the CI on the stand and that he would, or could, testify to that effect.[1] Mr. Macauley cannot prove that the CI lied to the government, but Mr. Macauley has never had $350,000 "tied up in the US" from drug sales or from any other source. The government has not been able to find any evidence to support that claim, or to even suggest that Mr. Macauley has any hidden assets here or elsewhere.

Therefore, Mr. Macauley objects to the report's conclusion that he had such

---

[1] The CI was wearing a wire for much of the time during this investigation in order to record conversations with the targets, including Mr. Macauley and others; however, this alleged statement was not among the recorded statements, for whatever reason.

money, when the only actual facts are that the CI claimed that Mr. Macauley told him that he had that money.

### III. SENTENCING FACTOR DISPUTES

Mr. Macauley objects to the conclusion drawn in the report (report, ¶ 66) that he was the organizer and leader of the instant conspiracy, and that he should, therefore have a four (4) level enhancement imposed on him. He was, in fact, referred to by some of the people involved in the conspiracy as "boss," but a fair reading and consideration of the facts of the case can only lead to the conclusion that he was, at worst, an enabler and go-between for the actual organizer and leader of the conspiracy and the other members of the conspiracy. The reference to him as "boss" was more as a result of his relatively advanced age, than it was reflective of any authority he may have had among the conspirators. In any event, the four (4) level enhancement is excessive, and reducing Mr. Macauley's offense level by those four (4) levels would reduce him from an offense level 35 to an offense level 31, resulting in a guideline range of 108 to 135 months, allowing for the imposition of a sentence at the statutory mandatory minimum of 120 months (10 years) as a within the guidelines sentence.

### IV. COOPERATION

Mr. Macauley has cooperated with the government. He entered into a plea agreement in this matter and has provided the government with significant assistance in its efforts to resolve this prosecution (with respect to Mr. Macauley's co-defendants). In fact, William Andoh plead guilty on January 24, 2012, at least in part because Mr. Macauley had already plead guilty and would be cooperating with the government in its pursuit of Mr. Andoh. Mr. Macauley has also made multiple attempts to assist the

government in expanding this prosecution and prosecuting others involved in the drug trade with Ghana. He may, or may not, have been able to provide sufficient information to convince the government to make a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure, or to seek a downward departure pursuant to §5K1.1 of the guidelines, but his efforts continue. The government must believe those efforts have some potential for value, since government agents continue to work with Mr. Macauley in his efforts to provide additional information to them.

## V.  GUIDELINES AND PSIR RECOMMENDATION

The guideline range recommended in the report, as amended if necessary, is 168 to 210 months of imprisonment. As previously noted, Mr. Macauley believes that a sentence within the guidelines would be excessive and that a sentence at the statutory mandatory minimum of 120 months would be appropriate herein. Also as previously noted, if Mr. Macauley does not have the four (4) level enhancement added for his role in the offense, such a mandatory minimum sentence would fall in the middle of the then-appropriate guideline range of 108 to 135 months.

## VI. §3553(a) CONSIDERATIONS

In light of the decision in *United States v. Hughes*, 401F.3d 540 (4th Cir. 2005), this Court must "first calculate . . . the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] §3553(a) before imposing the sentence. . . . [Then, if] the court imposes a sentence outside the guideline range, it should explain its reasons for doing so . . . . *Id*., at 546. The proper calculation of the guideline range has

been addressed, and the application of the other 18 U.S.C. §3553(a) factors is considered herein.

Under 18 U.S.C. §3553(a), the sentencing court must consider seven (7) factors before imposing a sentence after conviction. The final sentence should be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in the statute. 18 USC §3553(a). The following analysis is provided to assist this Court in determining the appropriate sentence for Mr. Macauley.

### *(1) "the nature and circumstances of the offense and the history and characteristics of the defendant"*

#### (a) The nature and circumstances of the offense

The report (and the statement of facts incorporated as part of Mr. Macauley's plea agreement herein) adequately describes the nature and circumstances of the offense in this case. Mr. Macauley was apprehended for, charged with and plead guilty to Count I of the indictment, engaging in a conspiracy to import and distribute heroin. This position with respect to sentencing has already discussed the application of the role in the offense enhancement, and the impact of the elimination of that enhancement to place the statutory mandatory minimum sentence in the middle of the then-appropriate guideline range.

#### (b) The history and characteristics of the defendant

Mr. Macauley and his history and characteristics are adequately described in the report. Mr. Macauley has learned from his criminal behavior that the risks of such behavior far outweigh the potential benefits. He will not appear before this, or any, court again. A discussion of the impact of Mr. Macauley's age on sentencing is included

herein at Part VII, discussing factors that support a downward departure and a variance herein. Suffice it to say that Mr. Macauley involved himself in a serious offense, showing a lack of judgment at odds with his prior history and the sum total of his life experience.

### *(2) "the need for the sentence imposed:"*

(a) **to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense**

(i) *to reflect the seriousness of the offense*

The sentence to be imposed in this case must reflect the nature of the offense. Mr. Macauley was found guilty of conspiring to import and distribute heroin into the United States from Ghana. That is a serious crime. However, the 10 year (120 month) statutory mandatory minimum sentence for this crime is also a serious term of imprisonment, and appears adequate to satisfy the concern for the seriousness of the crime involved, and would be "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 USC §3553(a).

(ii) *to promote respect for the law*

Presumably, this clause is intended to include the phrase "by the public." After all, in order for a society to live by "the rule of law," as we do in the United States, the public must be able to maintain respect for the law. This requires, *inter alia*, the public to believe that the law is applied even-handedly, and that there be a relationship between the conduct of a defendant to the harm, if any intended, the harm, if any actually caused by that conduct, and the punishment imposed, balanced by the "history and characteristics of the defendant." As previously stated, applying the guidelines herein

results in a sentence of 168 to 210 months, an excessive sentence. For this 62 ½ year old defendant, the statutory mandatory minimum sentence of 120 months (10 years), if known by the public, will promote respect for the law, without incarcerating, or over-incarcerating, Mr. Macauley.

(iii) *promote just punishment for the offense*

It is difficult to see much distinction between this part (iii) and part (ii), since a just punishment for the offense should, of necessity, "promote respect for the law." Again, one must weigh the criminal behavior in context, consider the harm intended, if any, the harm caused, if any, and the background of the defendant. A statutory mandatory minimum sentence of 120 months, when balanced in light of Mr. Macauley's history, age, health, and behavior, appears sufficiently harsh as to be "just punishment."

(b) **to afford adequate deterrence to criminal conduct**

The language of this sub-section is not clear if the deterrence is meant to apply to the defendant, or to the general public, and both are certainly appropriate interpretations. Certainly, in Mr. Macauley's case, a sentence of 10 years (120 months) pursuant to the statutory mandatory minimum, is more than adequate to deter him from future criminal conduct. When he is released, after 102 months (8 ½ years) in prison (after the standard 15% reduction for "good time"), the message will be loud and clear, and such punishment cannot help but send an effective and adequate message to Mr. Macauley about his future behavior, as well as reminding him of his prior bad decisions. At that time, Mr. Macauley will be 71 years old, and will not be a serious risk of recidivism. *See*, Part VII herein.

As for the deterrent effect on the general public, there is no easy way to calculate the deterrent effect in any case, since we can not properly measure the public's awareness of the sentence imposed on Mr. Macauley, or its awareness of the criminal behavior that brought him to this point. Still, if the general public were to inquire, and were to learn what the Court knows about Mr. Macauley's background, non-criminal behavior and criminal behavior, including his cooperation with the government and the significant prison terms he will serve, it would be safe to say that no one would be eager to repeat what Mr. Macauley did if he or she knew that they would run any risk at all of being sentenced to even a day of imprisonment in a federal prison for doing so.

(c) **to protect the public from further crimes of the defendant**

This goal is very similar to that in the preceding sub-section. Certainly, if the punishment chosen by the Court is adequate to deter Mr. Macauley from (future) criminal conduct, as we have previously analyzed, then the sentence is "sufficient but not greater" than necessary to protect the public from future crimes of this defendant.

(d) **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

In light of his age and background, education and training opportunities are less important in this case than medical care systems available. Mr. Macauley is 62 ½ years old and has high blood pressure/hypertension. He reports that he had a heart attack in Ghana during 2011, but the probation office has not been able to confirm that situation. In any case, Mr. Macauley is a health risk (Report, ¶ 91), and needs to be evaluated by this Court with that in mind.

### *(3) "the kinds of sentences available"*

Based upon the guideline range calculated in the report (or as reduced as requested herein), and the statutory mandatory minimum in this case, the only kind of sentence available is a prison of imprisonment for at least 120 months (10 years).

### *(4) "the kinds of sentence and the sentencing range established for*

**(a) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines**

(1) issued by the Sentencing Commission . . ."

The kind of sentence and the sentencing range calculation have already been discussed herein.

### *(5) "any pertinent policy statement"*

To our knowledge, sentencing in this case does not involve a policy statement. Therefore, there is no need to consider this factor.

### *(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"*

There are no issues of unwarranted sentence disparities in this matter.

### *(7) the need for restitution*

There is no restitution requiring payment as addressed in §3553(a)(7).

### VII. FACTORS SUPPORTING A DOWNWARD DEPARTURE AND VARIANCE

This Court may downwardly depart based upon a number of factors, none of which alone rise to the level necessary to support such a departure, but which, when taken as a whole, indicate that this situation is different than those at the "heartland " of the cases covered by the guidelines. *See*, *United States v. Rioux*, 97 F.3d, 648, 663 (2nd

Cir. 1996); *United States v. Anders*, 956 F.2d 907, 911 (9th Cir. 1992). *See, also, United States v. Kang*, 2004 U.S. App. LEXIS 22087 * 3 (9th Cir. 2004), citing to US SENTENCING GUIDELINES MANUAL § 5K2.0. After considering the following argument concerning Mr. Macauley's age and his potential for recidivism, Mr. Macauley believes that this Court should apply such a departure and the imposition of a variant sentence, based on Mr. Macauley's age, his cooperation and his otherwise good character.

Courts across the country have found the likelihood of recidivism, specifically a low chance of recidivism, to be a basis for which a downward variance is available, and warranted. *See*, *Simon v. United States*, 361 F.Supp.2d 35, 48 (EDNY 2005) (43 year old defendant); *United States v. Nellum*, 2005 U.S. Dist. LEXIS 1568 (ND Ind. 2005) (57 year old defendant); *United States v. Carrmona-Rodriguez*, 2005 U.S. Dist. LEXIS 6254 at *12-13 (SDNY 2005) (54 year old defendant); and *United States v. Sanchez*, 2007 U.S. Dist. LEXIS 1371 at *13 (SDNY 2007) (36 year old defendant in Criminal History Category IV). Mr. Macauley was born in 1949, and he will be 62 ½ years old at the time of his sentencing in this matter. Assuming that he is sentenced to 10 years (120 months) pursuant to a downward departure and the imposition of a variant sentence,[2] and pursuant to the statutory mandatory minimum, he will be 71 years old when he is released, after serving 8 ½ years in prison.

Mr. Macauley respectfully urges this Court to consider the statistically low likelihood that he will engage in future criminal behavior. The U.S. Sentencing

---

[2] If this Court declines to impose the four (4) point enhancement for role in the offense (*see*, *supra*) in this case, and instead imposes a 120 month statutory mandatory minimum sentence within the recalculated guideline range, then this discussion is moot.

Commission has issued the U.S. SENTENCING COMM'N, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (2004) (hereinafter, *Measuring Recidivism*) (available at: http://www.ussc.gov/publicat/Recidivism_General.pdf), in which it concluded that increased age equals reduced potential for recidivism. Specifically, the Sentencing Commission determined that "[r]ecidivism rates decline relatively consistently as [the defendant's] age increases." *Measuring Recidivism*, p. 12. Thus, according to the Sentencing Commission's statistics, 29.5% of Criminal History Category I defendant's under the age of 21 recidivate. *Id.*, p. 28 (a copy of which is attached hereto as Exhibit A). That recidivism is defined as "an offender's re-arrest, including supervised release/probation violations, re-arrest, or re-conviction" within 24 months after release from probation-only sentences or from release from confinement. *Id.*, p. 28, notes 1 and 2. Mr. Macauley is a Criminal History Category I defendant, but he will be 62 ½ years old when he is sentenced. He is actually off the Sentencing Commission's chart, since it only goes as high as "Over 50" in its contemplation of defendants. However, even using that designation, only 6.2% of Criminal History Category I defendants over the age of 50 recidivate. *Id.*, p. 28. It is apparent from the relatively consistent reduction in recidivism rates as age increases that the recidivism rate for Criminal History Category I defendants who are over the age of 60 will, statistically, be approximately 5%, if that. Thus, Mr. Macauley is, statistically, highly unlikely to recidivate.

      Not viewed as a separate factor, but taken as a whole with his cooperation and his otherwise good character, Mr. Macauley's age, and the reduced risk of recidivism resulting from that age, takes this case out of the heartland of guideline cases. Therefore,

this Court is authorized to, and should, depart downward and impose a variant sentence of 120 months (10 years) pursuant to the statutory mandatory minimum sentence in this case.

## VIII. CONCLUSION

This Court, having found Mr. Macauley guilty upon his plea of guilty; having reviewed the presentence investigation report (as corrected and amended), this position with respect to sentencing and the government's position with respect to sentencing and the sentencing factors enumerated in 18 U.S.C. §3553(a); and having heard the presentations of counsel and the defendant, should impose a sentence consistent with the mandatory minimum statutory sentence of 120 months, for the reasons stated herein. Such a sentence would ". . . be sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 USC §3553(a). In addition, because Mr. Macauley has no funds, and no reasonably foreseeable source of funds, no fine or costs should be imposed against him as a result of this matter.

Respectfully submitted,

EDWARD MACAULEY

By:         /s/
     WILLIAM B. CUMMINGS, ESQUIRE
     VA Bar No. 6469
     Counsel for EDWARD MACAULEY
     WILLIAM B. CUMMINGS, P.C.
     Post Office Box 1177
     Alexandria, Virginia 22313
     (703) 836-7997
     Fax (703) 836-0238
     wbcpclaw@aol.com

## CERTIFICATE OF SERVICE

  I hereby certify that on the 26th day of March, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to at least the following registered ECF users:

> James P. Gillis, Esquire
> James.p.gillis@usdoj.gov
> United States Attorney's Office, EDVA
> 2100 Jamieson Avenue
> Alexandria, Virginia  22314

  AND I HEREBY CERTIFY THAT I am mailing the foregoing document and the NEF by U.S. mail to the following non-filing user:

> Carla G. Coopwood
> Senior U.S. Probation Officer
> 10500 Battleview Parkway, Suite 100
> Manassas, VA 20109

             /s/
             WILLIAM B. CUMMINGS, ESQUIRE
             VA Bar No. 6469
             Counsel for EDWARD MACAULEY
             WILLIAM B. CUMMINGS, P.C.
             Post Office Box 1177
             Alexandria, Virginia  22313
             (703) 836-7997
             Fax (703) 836-0238
             wbcpclaw@aol.com